IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

| | |
|---|---|
| DIANNA WITTENBERG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Civil Action No. 3:10-CV-00058-JPB<br>FIRST INDEPENDENT MORTGAGE )<br>COMPANY, et al., )<br>)<br>Defendants. )<br>) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

U.S. Bank National Association, ("U.S. Bank"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7.02 of the Local Rules of Civil Procedure, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Complaint.

**STATEMENT OF THE CASE**

Plaintiff refinanced her home loan in 2006 and now seeks to cancel a valid mortgage and reside in her home free of charge. Plaintiff is dissatisfied that the loan she received was lawfully securitized on the secondary market and that she was not offered a loan modification, satisfactory to her, after she began to experience financial difficulties in 2008. In an effort to blur the lines of liability and to sue every known entity associated with her loan, Plaintiff alleges that "Defendants" were responsible for the supposed bad acts, without specifying which defendant is responsible for each specific act. It appears that the only reason U.S. Bank is named in this action is because it serves as Trustee of the Banc of America Funding 2006-G Trust (the "Trust"), which was created pursuant to a Pooling and Servicing Agreement ("PSA") to receive

all right, title and interest in a pool of mortgage loans, including Plaintiff's, as part of the securitization process.

While it is difficult to tell what specific allegations are directed toward U.S. Bank,[1] the following is clear: (1) any attempt by Plaintiff to hold U.S. Bank liable for its involvement in the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" is explicitly preempted by the National Bank Act (the "NBA") and the Office of the Comptroller of the Currency (the "OCC") regulations; (2) U.S. Bank did not originate and is not the servicer of Plaintiff's loan; and (3) the Trust was not yet established and U.S. Bank was not appointed Trustee at the time Plaintiff's loan was originated.  The Amended Complaint fails to state a plausible claim for relief and demonstrates that Plaintiff does not have legitimate causes of action against U.S. Bank, and therefore dismissal is proper.

## STATEMENT OF FACTS

The Complaint, taken as true, sets forth a straightforward financial transaction. Beginning in 2005, Plaintiff sought to refinance her home loan with First Independent Mortgage Company ("First Independent").[2]  Am. Compl. ¶¶ 18-22.  On March 27, 2006, Plaintiff closed on her refinance loan and "signed, initialed, and dated each page of the March 27, 2006 documents."  Am. Compl. ¶ 32.  On July 31, 2006, the Trust was established naming U.S. Bank as Trustee.[3]  Am. Compl. ¶ 16; Ex. A.  Sometime later, facing an "imminent default," Plaintiff

---

[1] Plaintiff has named U.S. Bank in the caption of the following counts: Count II, Count III, Count V, Count VIII, and Count XIII.  Accordingly, U.S. Bank is only responding directly to those counts.
[2] Plaintiff agreed to a loan in the amount of $416,000 of which approximately $480,000 0f the proceeds were used to pay off the existing loan and approximately $125,000 of the proceeds were paid to Plaintiff in cash.
[3] Plaintiff alleged in the original Complaint that the Trust was established on "July 31, 2006," Compl. ¶ 51 n.19, and specifically relies upon and refers to the PSA to which U.S. Bank is a party in her Amended Complaint.  Accordingly, U.S. Bank has attached the first page of the PSA for the Court's consideration as Exhibit A, which confirms that U.S. Bank was named Trustee on July 31, 2006.  See Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("[A] court may consider [a

contacted Wells Fargo Bank, N.A. ("Wells"), the loan servicer, to seek a modification of her loan. Am. Compl. ¶ 42. According to Plaintiff, in March 2009, and again in May 2009, Wells offered her loan modifications that she found unsatisfactory. Am. Compl. ¶¶ 50, 61. Plaintiff then sought to modify her loan through the Home Affordable Modification Program ("HAMP"), but was unable to obtain a permanent modification. Am. Compl. ¶¶ 63-77. After learning that she did not qualify for a permanent HAMP modification, Plaintiff brought this action. Am. Compl. ¶ 80.

## ARGUMENT

I. **DISMISSAL IS PROPER, WHERE, AS HERE, PLAINTIFF HAS NO PLAUSIBLE CLAIM THEORIES AGAINST U.S. BANK.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, -- U.S. --, --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The court does not need to "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

---

document] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on it the complaint and [if[ the plaintiffs do not challenge its authenticity."). The consideration of such a document by the court does not convert the motion to dismiss into a motion for summary judgment. Staats v. Bank of America, N.A., No. 3:10-cv-68, at 11 (N.D. W. Va. November 4, 2010) (Bailey, J.).

the line between possibility and plausibility of entitlement to relief.'" Moss v. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). In this case, the Plaintiff's claims fall well short of plausibility and should be dismissed.

## II. PLAINTIFF'S TILA CLAIMS IN COUNT II ARE TIME-BARRED.

In Count II, Plaintiff alleges that she has "suffered injury" based upon allegations that the Defendants failed to verify her repayment ability and make required disclosures under TILA and Regulation Z. Pursuant to 15 U.S.C. § 1640(e), a party seeking damages under TILA must bring an action within one year from the date of the occurrence of the violation, which is "no later than the date the plaintiff enters the loan agreement." Brackett v. Corinthian Mortgage Corp. (In re Brackett), No. 08-bk-01186, Adv. No. 09-00098, 2010 WL 1254705, at *7 (Bankr. N.D. W. Va. Mar. 25, 2010) (quoting Tucker v. Beneficial Mortgage. Co., 437 F. Supp. 2d 584, 589 (E.D. Va. 2006)); see Faulkner v. OneWest Bank, FSB, No. 3:10-CV-12, 2010 U.S. Dist. LEXIS 59688, at *19 (N.D. W. Va. June 16, 2010).[4] "Nondisclosure is not a continuing violation for purposes of the statute of limitations." Polis v. Am. Liberty Fin., Inc., 237 F. Supp. 2d 681, 684 (S.D. W. Va. 2002). A TILA rescission claim has a three-year statute of limitations under 15 U.S.C. § 1635(f). Faulkner, 2010 U.S. Dist. LEXIS 59688, at *18; Brackett, 2010 WL 1254705, at *7.

Here, Plaintiff alleges that the loan originated on March 27, 2006, and she did not file the original Complaint until June 8, 2010, well outside of the applicable windows to seek relief under TILA. Moreover, the Amended Complaint does not allege that U.S. Bank originated or serviced Plaintiff's loan. In fact, the Trust to which to which U.S Bank serves as Trustee was not even established when the loan was originated. Therefore, U.S. Bank cannot be held liable for any alleged TILA violation. Accordingly, Plaintiff's TILA claims in Count II of the Complaint should be dismissed with prejudice with regard to U.S. Bank.

---

[4] Copies of all cited unpublished opinions are attached for the Court's convenience as Exhibit C.

4

**III.** **THE NBA PREEMPTS ALL OF PLAINTIFF'S CLAIMS IN COUNTS III, V, VIII AND XIII AGAINST U.S. BANK IN CONNECTION WITH THE SUPPOSED PROCESSING, ORIGINATION, OR SERVICING OF PLAINTIFF'S LOAN OR U.S. BANK'S PARTICIPATION IN THE SECONDARY MORTGAGE MARKET.**

Plaintiff's remaining claims against U.S. Bank for civil conspiracy (Count III), unjust enrichment (Count V), negligence (Count VIII), and declaratory judgment (Count XIII) all fail as a matter of law because such claims are preempted by the NBA and OCC regulations.

**A.** **The NBA Gives The OCC The Exclusive Authority To Regulate National Banks.**

"The NBA, codified at 12 U.S.C. § 1 et seq., vests in nationally chartered banks enumerated powers and 'all such incidental powers as shall be necessary to carry on the business of banking.'" H&R Block Eastern Enters., Inc. v. Raskin, 591 F.3d 718, 721 n.4 (4th Cir. 2010) (quoting 12 U.S.C. § 24 Seventh). The NBA expressly governs the conduct of national banks and empowers the OCC to regulate real estate loans made by national banks. 12 U.S.C. § 371(a); 12 C.F.R. § 34.3(c); see also Frye v. Bank of America, N.A., No. 3:10-CV-48, 2010 U.S. Dist. LEXIS 83969 at *14 (N.D. W. Va. Aug. 16, 2010).

Under this authority, the OCC promulgated preemption regulations in 12 C.F.R. §§ 34.3 and 34.4, which are entitled to "no less pre-emptive effect than federal statutes." Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). Section 34.3(a) provides that national banks have the power to "make, arrange, purchase, or sell loans or extensions of credit, or interests therein, that are secured by liens on, or interests in, real estate . . . ." 12 C.F.R. § 34.3(a). "Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a). The regulations provide illustrative examples of the types of state laws that are preempted. "Specifically, a national bank may make

5

real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning:

> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; and
>
> (12) Rates of interest on loans."

12 C.F.R. §§ 34.4(a)(4), (9), (10), and (12).

The OCC also gives national banks the power to impose charges and fees, such as referral fees. 12 C.F.R. § 7.4002. Moreover, the OCC provides, in section 34.4(b), categories of state laws that apply to national banks, but only if they incidentally affect the exercise of national banks' real estate lending powers. 12 C.F.R. § 34.4(b); see Lomax v. Bank of America, N.A., 435 B.R. 362, 369 (N.D. W. Va. 2010).

### B.    U.S. Bank Is A National Bank Entitled To Assert NBA Preemption.

U.S. Bank is a national bank. See OCC List of National Banks and Federal Branches and Agencies active as of 12/31/2010, available at *http://www.occ.gov/topics/licensing/national-bank-lists/bank-list-national-by-name-v2.pdf* (attached for the Court's convenience as Exhibit B); Brackett, 2010 WL 1254705, at *2-3 (taking judicial notice of entity's status as a subsidiary of a Federal Savings Bank). As a national bank, U.S. Bank is governed by the preemptive OCC regulations promulgated pursuant to the NBA. See, e.g., Lomax, 435 B.R. at 369.

6

### C. The NBA Preempts Putative State Law Claims Covered by 12 C.F.R. § 34.4(a) And Any Putative State Law Claims That Affect Lending.

This district has "adopted the analysis outlined by the Office of Thrift Supervision ("OTS") for considering the preemptive effect of a nearly identical regulation promulgated under the Home Owners' Loan Act of 1933 ('HOLA') concerning the application of state laws to federal thrifts." Lomax, 435 B.R. at 369.

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in [the Regulation's illustrative examples of the types of state laws preempted]. If so, the analysis will end there; the law is preempted. If the law is not covered [by one of the illustrative examples], the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown [to have, at most, only an incidental effect on lending operations.] Any doubt should be resolved in favor of preemption.

Id. at 370 (quoting OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). The substance of the claim, as opposed to what plaintiff calls it, is determinative of preemption. Watkins v. Wells Fargo Home Mortgage, 631 F. Supp. 2d 776, 782 (S.D. W. Va. 2008); Padgett v. OneWest Bank, FSB, No. 3:10-CV-08, 2010 U.S. Dist. LEXIS 38293, at *23 (N.D. W. Va. Apr. 19, 2010) (internal citations and quotations omitted).

In the present case, the Court need only conduct the first part of the preemption analysis. Pursuant to the provisions of 12 C.F.R. §§ 34.4(a)(4), (9), (10), and (12), Plaintiff's putative state-law claims are preempted as a matter of law with respect to U.S. Bank. However, even if this Court determines that Plaintiff's claims seek to regulate U.S. Bank's conduct that falls outside of the provisions of § 34.4(a), then allowing Plaintiff to assert her claims would regulate U.S. Bank in a way that would more than incidentally affect lending. Accordingly, as discussed in more detail below, U.S. Bank is entitled to dismissal on all of Plaintiff's claims against it.

IV. **PLAINTIFF'S CONSPIRACY TO DEFRAUD CLAIM THEORY IMPERMISSIBLY LUMPS ALL DEFENDANTS TOGETHER, CANNOT MEET THE HEIGHTENED PLEADING REQUIREMENT OF RULE 9(B), AND IS OTHERWISE PREEMPTED BY THE NBA.**

The sole purpose of Plaintiff's conspiracy claim in Count III is "to rein in each of the defendants under each of the counts alleged where there is otherwise no support for such attribution of wrongdoing." Kline v. Wilmington Fin., Inc., No. 2:09-cv-1082, 2010 WL 2698792, at *5 (S.D. W. Va. July 7, 2010). Plaintiff's conspiracy claim fails as a matter of law because the acts she complains of are explicitly preempted by the NBA and OCC regulations and Plaintiff has failed to meet the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

    A. **The NBA Preempts Plaintiff's Allegations that Comprise Her Claim for Civil Conspiracy.**

"A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255, 269 (2009). The preemptive effect of the NBA and OCC regulations applies to conspiracy claims. See Bassett v. Ruggles, No. CV-F-09-528, 2010 WL 1525554, at *20 (E.D. Cal. Apr. 15, 2010) (finding a conspiracy claim preempted by HOLA because it was based upon alleged misrepresentations and disclosures affecting the loan's terms of credit).

Much of Plaintiff's conspiracy claim focuses on allegations that "defendants" conspired to induce Plaintiff to obtain a loan that later, unbeknownst to her, would be sold to investors on the secondary market. Am. Compl. ¶¶ 134-139. The OCC regulations explicitly authorize national banks to sell, purchase, invest, and participate in mortgages, and preempts state law claims seeking to regulate such conduct. 12 C.F.R. § 34.4(a)(10). The Complaint's only

8

allegation as to U.S. Bank in this regard is that it serves as Trustee of the Trust which was assigned Plaintiff's mortgage obligation. Am. Compl. ¶¶ 16. The OCC and the courts have recognized the dynamic powers of national banks and the need for national banks to participate in the secondary mortgage market free of regulation by state law:

> [T]he [OCC's] policy determination . . . is extensively developed in the OCC's recent revision of 12 C.F.R. part 34, which was designed to demarcate more clearly what state laws are and are not preempted with respect to real estate lending activities. See Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed.Reg. 1904 (Jan. 13, 2004). There the OCC explained that 12 U.S.C. § 24 (Seventh) provides a "flexible grant of authority" to national banks to further "Congress's long-range goals in establishing the national banking system." Id. at 1907. The OCC noted that *achievement of these goals requires national banks "whose powers are dynamic and capable of evolving" because "the financial services marketplace has undergone profound changes" in recent years*. Id. The OCC specifically observed that "[c]hanges in applicable law also have contributed to the expansion of markets for national banks and their operating subsidiaries." See id. The OCC found, however, that "national banks' ability to conduct operations to the full extent authorized by Federal law has been curtailed as a result" of increasing state efforts to regulate bank activities. Id. at 1908. As an example, the OCC pointed to its recent ruling that the Georgia Fair Lending Act ("GFLA") was preempted from applying to national banks and their operating subsidiaries. See id. (citing Preemption Determination and Order, 68 Fed.Reg. 46264-02 (Aug. 5, 2003)). *The OCC stated that "the GFLA caused secondary market participants to cease purchasing certain Georgia mortgages and many mortgage lenders to stop making mortgage loans in Georgia*. National banks have also been forced to withdraw from some products and markets in other states as a result of the impact of state and local restrictions on their activities." Id.

Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 320 (2d Cir. 2005) (emphasis added). Thus, any attempt to regulate a national bank's conduct in the secondary mortgage market relating to the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" is explicitly preempted by the NBA and OCC Regulations.

Plaintiff also alleges as part of her conspiracy claim that defendants "intentionally concealed" the fact that her loan would be "immediately packaged and sold, to investors on a secondary mortgage market." Am. Compl. ¶¶ 134, 135. This attempt to regulate the manner in

9

which a national bank discloses information to a borrower at origination and the content of those disclosures is preempted because the OCC has the exclusive authority to regulate disclosures and the conduct of national banks at origination pursuant to 12 C.F.R. § 34.4(a)(9) and (10). See Watkins, 631 F. Supp. 2d at 783, cf. Coffman v. Countrywide FSB, No. 2:09-00587, 2010 U.S. Dist. LEXIS 78882, at *21-22 (S.D. W. Va. Aug. 4, 2010); Faulkner, 2010 U.S. Dist. LEXIS 59688, at *16-17; Brackett, 2010 WL 1254705, at *6.

Plaintiff also challenges the terms of her loan, alleging that rather than "provide a fixed-rate product," Defendants worked "in concert" to place "plaintiff in a financial vehicle doomed for failure." Am. Compl. ¶ 140. This allegation is preempted by 12 C.F.R. § 34.21(a), which specifically authorizes adjustable-rate mortgages, as well as §§ 34.4(a)(4) and (12), which give the OCC the exclusive authority to regulate "terms of credit" and "rates of interest."

Plaintiff's final allegation is that five of the defendants, including U.S. Bank, attempted to "unlawfully foreclose on plaintiff's property." See Am. Compl. ¶ 142. Even if Plaintiff could maintain an action for "attempted foreclosure," such action would be preempted by 12 C.F.R. § 34.4(a)(4), which explicitly authorizes a national bank to determine the "circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan."

In addition to being explicitly preempted by OCC Regulations, prohibiting national banks from participating in the sale or investment of loans would more than incidentally affect lending. Requiring participants in the secondary mortgage market to obtain the obligor's consent prior to purchasing or securitizing a note would impose an undue burden on these participants since many loans are packaged and sold in bulk with thousands of notes. The subsequent assignment of a mortgage obligation, contrary to Plaintiff's contentions, does not invalidate the note or affect

the obligor in any way.  Likewise, restricting the terms of a loan that a national bank may offer to a consumer would greatly affect how a national bank conducts business and would restrict its "ability to conduct operations to the full extent authorized by Federal law."  See Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1908 (Jan. 13, 2004).

As all of the allegations underlying Plaintiff's conspiracy claim are preempted, U.S. Bank is entitled to dismissal on Count III.

B.      **Count III Fails to Meet the Heightened Pleadings Requirements of Rule 9(b).**

In addition to being explicitly preempted by the NBA and OCC Regulations, Plaintiff's "conspiracy to defraud" claim fails as a matter of law because it is not pled with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) applies to allegations of conspiracy to defraud.  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 790 (4th Cir. 1999).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, the pleader must allege "the time, place, and contents of the false representations, as well as the *identity of the person* making the misrepresentation and what he obtained thereby."  Harrison, 176 F.3d at 784 (citation and quotation marks omitted) (emphasis added).  The factual allegations must "be specific enough to give defendants sufficient notice of the particular misconduct that is alleged to constitute fraud so that they can defend against the charge."  Zaremski v. Keystone Title Assocs., Inc., 884 F.2d 1391, 1989 WL 100656, at *2 (4th Cir. Aug. 30, 1989) (unpublished table decision).  "Rule 9(b) does not allow a complaint to merely lump defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007); see also United States ex

rel. Carter v. Halliburton Co., No. 1:08CV1162, 2009 WL 2240331, at *15 (E.D. Va. July 23, 2009); Balko v. Carnegie Fin. Group, Inc. (In re Balko), 348 B.R. 684, 695-96 (W.D. Pa. 2006); Dealers Supply Co. v. Cheil Indus., Inc. 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004). Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). Halliburton, 2009 WL 2240331, at *7.

 Here, Plaintiff has impermissibly lumped all Defendants together. The allegations in the Complaint are strikingly similar to the complaint that failed to meet the requirements of Rule 9(b) in Balko, 348 B.R. at 695. In Balko, a borrower who refinanced her home loan brought an action against numerous parties including plaintiff's mortgage broker, lender, an appraisal company, and J.P. Morgan, the trustee of a pooling and servicing agreement. Among the plaintiff's claims were alleged violations of TILA, state consumer protection laws, common law fraud and conspiracy. Subsequent to the closing of plaintiff's loan, the lender pooled and securitized plaintiff's note and mortgage, with J.P. Morgan serving as the trustee of the pool of securitized loans. It was undisputed that J.P. Morgan had no involvement in the solicitation, underwriting or closing of the loan. The Balko court dismissed the conspiracy to defraud claim against the defendants on two grounds. First, the plaintiff impermissibly lumped the defendants together, violating the particularity requirements of Rule 9(b). The court noted that to "use the term 'lumping' to describe the allegations against all defendants . . . would be a generous characterization." Id. at 695. As an example the court cited the following allegation: "'The Defendants conspired together and acted in concert to defraud the Plaintiffs in some or all of the following particulars:' and then proceeds to set forth various generic misdeeds committed by unidentified actors." Second, the court found that the complaint could not even meet the more

12

relaxed standard of Rule 8(a) because the complaint is devoid of allegation of wrongful conduct committed by the lender or the trustee, J.P. Morgan.

Here, Plaintiff does no more than initially name U.S. Bank, Wells Fargo, and numerous other defendants in a conclusory allegation, and then uses such phrases as "defendants had an understanding;" "defendants agreed;" and "defendants worked in concert." See Am. Compl. ¶¶ 135-145. Plaintiff then proceeds to recite the elements of a conspiracy claim in a conclusory fashion. Am. Compl. ¶ 144. Plaintiff has not stated any of her allegations with particularity and has not alleged any specific wrongdoing by U.S. Bank.

Moreover, Plaintiff has not made any allegations that U.S. Bank has ever had any contact with Plaintiff, and the Amended Complaint is completely devoid of any allegation of fact that U.S. Bank made a material and false representation upon which Plaintiff was entitled to rely. Therefore, U.S. Bank is entitled to dismissal of Plaintiff's conspiracy claim in Count III.

### V. COUNT V FAILS TO STATE A PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT AND IS OTHERWISE PREEMPTED BY THE NBA.

Count V of the Amended Complaint for unjust enrichment, as applied to U.S. Bank, also fails to state a claim. Plaintiff claims "Defendants" were unjustly enriched by selling the Plaintiff's note and receiving payments from third parties, including investors, insurers, Credit Default Swaps, other borrowers, the United States Treasury, and even "Federal bailout from the tax payer money" Am. Compl. ¶¶ 156-158 (emphasis added), but does not specifically state what payments, if any, were received by U.S. Bank, as a Trustee. Plaintiff has not alleged any facts showing that the sale or investment of her mortgage is a valid cause of action. Plaintiff has also failed to allege any facts demonstrating why or how it could be inequitable and unconscionable for U.S. Bank to receive payments or why it is improper for U.S. Bank to serve in a limited role as Trustee of the Trust relating to her loan. Veolia Es Special Services, Inc. v.

Techsol Chem. Co., No. 3:07-0153, 2007 WL 4255280, at *10 (S.D. W. Va. Nov. 30, 2007) (holding that to prevail on a claim for unjust enrichment, it must be "inequitable *and* unconscionable" for the party to avoid paying for the benefit.

Furthermore, the allegations in Count V are preempted as to U.S. Bank by 12 C.F.R. § 34.4(a)(10) which expressly authorizes the sale or purchase of, or investment or participation in, mortgages without regard for state law. Accordingly, Count V of the Amended Complaint is wholly inadequate to state a claim for relief as to U.S. Bank.

### VI. COUNT VIII FAILS TO STATE A PLAUSIBLE CLAIM FOR NEGLIGENCE AND IS OTHERWISE PREEMPTED BY THE NBA.

In Count VIII of her Amended Complaint, Plaintiff purports to make a claim for negligence. This putative claim is but another attempt to improperly impose duties on U.S. Bank relating to the "[p]rocessing, origination, [or] servicing" of mortgages under the guise of a state law claim. As such, this count, too, is preempted by 12 C.F.R. § 34.4(a)(10). Moreover, Count VIII does not allege that U.S. Bank in particular did or did not do anything wrong. Rather, Plaintiff claims that First Independent negligently failed to verify her accurate income to qualify her for the loan. The Complaint then makes a broadside attack on the other Defendants and asserts that they collectively had a duty to preserve the original note and loan documents and that the "Defendants" have referred to an invalid note to foreclose or threaten to foreclose on the property.[5] See Am. Compl. ¶¶ 178-80. The factual basis for any such duty to preserve the note, if one exists and is not preempted, is not alleged, and there appears to be no recognized cause of action in West Virginia for the failure to preserve a note. Moreover, the Complaint (1) acknowledges that Plaintiff sought and received financing, (2) fails to allege that there were any differences as to any notes that Plaintiff seeks to put at issue in the Complaint, (3) does not allege

---

[5] According to the Amended Complaint, Plaintiff's loan closed on March 27, 2006. However, the Trust to which U.S. Bank serves as Trustee was not established until July 31, 2006

14

that Plaintiff ever repaid the loan or any note evidencing the loan, and (4) essentially concedes that Plaintiff defaulted on the loan. Based on these allegations, even if Plaintiff's claims were not otherwise preempted, Plaintiff would have no cause of action for negligence.

### VII. COUNT XIII, WHICH SEEKS A DECLARATORY JUDGMENT, ATTEMPTS TO ASSERT CLAIMS THAT ARE WITHOUT LEGAL SUPPORT AND ARE OTHERWISE PREEMPTED BY THE NBA.

Count XIII of the Complaint, which seeks a declaratory judgment that the deed of trust encumbering Plaintiff's property is null and void, is without any legal support and seeks to regulate conduct preempted by 12 C.F.R. § 34.4(a)(10). Plaintiff contends that the "negotiable instruments for Plaintiff's loan are not enforceable because the note was securitized and, therefore subject to and governed by a Pooling and Servicing Agreement." Am. Compl. ¶ 209. This theory is wholly without merit. There is no law or controlling authority that renders a promissory note unenforceable simply because it is subsequently securitized, transferred and included in a trust pursuant to a PSA. Suss v. JP Morgan Chase Bank, N.A., No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010). In the Suss case, the plaintiff advanced a nearly identical theory that the securitization of the note rendered it unenforceable. The court found that plaintiff had absolutely no legal support for his theory, and rejected plaintiff's feeble attempt to explain his position by stating "[t]here has been virtually no serious judicial examination or discussion of who owns the mortgage promissory notes which collateralize mortgage backed securities." Id. at *5.

Further, as explained above, OCC Regulations explicitly authorize a national bank to sell, purchase, invest or participate in mortgages and the secondary mortgage market. See 12 C.F.R. § 34.4(a)(10). Moreover, if a note was declared unenforceable under state law solely due to it being securitized, it would severely affect lending and national banking operations. Therefore,

15

any claim against U.S. Bank pertaining to its involvement in a Trust that holds a pool of securitized loans pursuant to a PSA is patently preempted as a matter of law, and dismissal of Count XIII with prejudice is proper.

### VIII. COUNTS I, IV, VI, VII, IX, X, XI, AND XII LITERALLY FAIL TO STATE A CLAIM AGAINST U.S. BANK.

U. S. Bank is not named in the caption under Plaintiff's Counts I, IV, VI, VII, IX, X, XI or XII. Accordingly, these Counts provide no basis for keeping U.S. Bank in this lawsuit or declining to dismiss U.S. Bank from this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### CONCLUSION

For the reasons stated above, U.S. Bank respectfully requests that it be dismissed from this lawsuit. The Plaintiff has already amended her complaint once, and any further attempt to amend would be futile. Therefore, all claims should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

U.S. BANK NATIONAL ASSOCIATION
By its Attorneys,

/s/ Jeremy C. Hodges

Marc E. Williams, Esq. (WVSB #4062)
marc.williams@nelsonmullins.com
Melissa Foster Bird, Esq. (WVSB # 6588)
melissa.fosterbird@nelsonmullins.com
Jeremy C. Hodges, Esq. (WVSB # 11424)
jeremy.hodges@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH, LLP
949 Third Avenue / Suite 200
Huntington, WV 25701
(304) 526-3500
*Counsel for Defendant U.S. Bank National Association*
Dated: February 14, 2011

~#4825-0208-9736 v.3~

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT MARTINSBURG**

| | |
|---|---|
| DIANNA WITTENBERG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. 3:10-CV-00058-JPB |
| FIRST INDEPENDENT MORTGAGE COMPANY, et al., | ) ) ) |
| Defendants. | ) ) ) |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certified that the foregoing "**Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint**" was filed with the court through the ECF system and copies of the above will be sent electronically to the registered participants as identified on the notice of electronic filing (NEF) and paper copies of the entire document will be sent to those indicated below on the 14th day of February, 2011.

Bobbie U. Vardan, Esq.　　　　Gary G. Geffert
BBI Law Group, P.C.　　　　　114 S. Maple Ave.
8230 Boone Blvd., Ste. #330　　P.O. Box 2281
Vienna, VA  22182　　　　　　Martinsburg, WV 25402

/s/ Jeremy C, Hodges
Marc E. Williams, Esq. (WVSB #4062)
Marc.williams@nelsonmullins.com
Melissa Foster Bird, Esq. (WVSB # 6588)
melissa.fosterbird@nelsonmullins.com
Jeremy C. Hodges, Esq. (WVSB # 11424)
jeremy.Hodges@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH, LLP
949 Third Avenue / Suite 200
Huntington, WV 25701
(304) 526-3500
*Counsel for Defendant U.S. Bank National Association*