**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG**

DIANNA WITTENBERG, )
)
Plaintiff, )
)
v. )
) Civil Action No.  3:10-CV-00058-JPB
)
FIRST INDEPENDENT MORTGAGE )
COMPANY, et al., )
)
Defendants. )
)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Wells Fargo Home Mortgage, Inc., a division of Wells Fargo Bank, N.A. ("Wells"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Complaint.  Plaintiff entered into a valid refinance home loan in 2006, and although content with the loan at that time,  she is now dissatisfied because the loan was lawfully securitized on the secondary market, and she did not get a loan modification, satisfactory to her, after she began to experience financial difficulties in 2008.

The Amended Complaint, taken as true, sets forth a straightforward financial transaction. Beginning in 2005, Plaintiff sought to refinance her home loan with First Independent Mortgage Company ("First Independent").[1]  Am. Compl. ¶¶ 18-22.  On March 27, 2006, Plaintiff closed on her refinance loan and "signed, initialed, and dated each page of the March 27, 2006 documents."  Am. Compl. ¶ 32.  Sometime later, facing an "imminent default," Plaintiff contacted Wells to seek a modification of her loan.  Am. Compl. ¶ 42.  According to Plaintiff, in

---

[1] Plaintiff agreed to a loan in the amount of $416,000 of which approximately $280,000 of the proceeds were used to pay off the existing loan and approximately $125,000 of  the proceeds were paid to Plaintiff in cash.

March 2009, and again in May 2009, Wells offered her loan modifications that she found unsatisfactory.  Am. Compl. ¶¶ 50, 61.  Plaintiff then sought to modify her loan through the Home Affordable Modification Program ("HAMP"), but was unable to obtain a permanent modification.  Am. Compl. ¶¶ 63-77.  After learning that she did not qualify for a permanent HAMP modification, Plaintiff brought this action.  Am. Compl. ¶ 80.

Throughout the Amended Complaint, Plaintiff ambiguously alleges that unspecified "Defendants" were responsible for the supposed bad acts.  Plaintiff describes Wells' role in a number of inconsistent ways, alternately referring to Wells as a "lender," "originator," and "servicer," selecting the particular title when it best serves her purposes.  The Amended Complaint demonstrates as a matter of law that Plaintiff does not have any legitimate cause of action against Wells, such that dismissal in favor of Wells is proper.  Even taking Plaintiff's confusing and contradictory allegations as true, the Amended Complaint fails to state a claim as a matter of law as to Wells because (1) Plaintiff's claims are pled without requisite factual support; (2) Plaintiff lacks a private right of action for several of her claims; and (3) many of the claim theories are preempted by the National Bank Act (the "NBA") and the Office of the Comptroller of the Currency (the "OCC") regulations.

## ARGUMENT

### I.   DISMISSAL IS PROPER, WHERE, AS HERE, PLAINTIFF HAS NO PLAUSIBLE CLAIM THEORIES AGAINST WELLS.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --U.S. --, --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

Id.  (citing Twombly, 550 U.S. at 556).  A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The court does not need to "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Moss v. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  In this case, the Plaintiff's claims fall well short of plausibility and should be dismissed.

## II.     THE LACK OF A PRIVATE RIGHT OF ACTION AND FAILURE TO ALLEGE SUFFICIENT FACTS IS FATAL TO PLAINTIFF'S RESPA CLAIMS IN COUNT I.

### A.     Plaintiff has No Private Right of Action under RESPA.

Count I asserts that Wells failed to provide Plaintiff with the Good Faith Estimate ("GFE") and other unnamed disclosures as required by the Real Estate Settlement Procedure Act of 1974 ("RESPA"), specifically 12 U.S.C. § 2604(c).  RESPA requires a lender to provide a borrower with a GFE, which estimates the settlement charges that a borrower is likely to incur at closing.  See 12 U.S.C. § 2604(c); 12 C.F.R. § 3500.7.  This Court has previously held that 12 U.S.C. § 2604 does not provide borrowers with a private right of action.  Faulkner v. OneWest Bank, FSB, No. 3:10-CV-12, 2010 U.S. Dist. LEXIS 59688, at *19 (N.D. W. Va. June 16, 2010);[2] Brackett v. Corinthian Mortgage Corp. (In re Brackett), No. 08-bk-01186, Adv. No. 09-00098, 2010 WL 1254705, at *8 (Bankr. N.D. W. Va. Mar. 25, 2010).[3]

---

[2] Copies of all cited unpublished opinions are attached for the Court's convenience as Exhibit C.
[3] This conclusion is consistent with other decisions from courts in the Fourth Circuit.  See, e.g., Ridgway v. Novastar Mortgage Inc., No. RDB-09-1814, 2009 U.S. Dist. LEXIS 121187, at *11 (D. Md. Dec. 30,

In <u>Faulkner</u>, the plaintiff alleged a failure "to provide and/or explain the required number of copies of the Good Faith Estimate."  This Court construed the allegation as a violation of 12 U.S.C. § 2604 and dismissed the claim with prejudice because, RESPA "provides no private right of action for violations of section 2604."   2010 U.S. Dist. LEXIS 59688, at *19.  Here, Plaintiff alleges that "Defendants violated 12 U.S.C. § 2604(c) by failing to provide to plaintiff the required pre-disclosure statements along with the [GFE] and the Uniform Residential Loan Application ("ULRA") within three business days after the ULRA was received or prepared." <u>Am.</u> <u>Compl.</u> ¶ 118.  Consistent with <u>Faulkner</u>, this allegation fails to give rise to a private cause of action.

**B.  <u>Plaintiff Has Failed to Allege Facts to Support a Violation 12 U.S.C. § 2605.</u>**

Plaintiff's statement in Count I that Wells "failed to adequately respond" to a Qualified Written Request ("QWR") fails to allege facts that would support a violation 12 U.S.C. § 2605(e).  To state a claim, Plaintiff must allege facts sufficient to make plausible the belief that Wells' timely response failed to meet the requirements of 12 U.S.C. § 2605(e)(2).[4]  Plaintiff merely alleges that, as part of its response, Wells provided her with a note dated March 21, 2006 and deed of trust dated March 27, 2006.  <u>Am.</u> <u>Compl.</u> ¶¶ 84, 85.  Plaintiff alleges no facts concerning the content of her QWR, specifically, facts about what information she sought and

---

2009); <u>Mentecki v. Saxon Mortg., Inc.</u>, No. 96-1629-A, 1997 WL 45088, at *5 (E.D. Va. Jan. 10, 1997); <u>Herrod v. First Republic Mortgage Corp.</u>, 218 W. Va. 611, 620, 625 S.E.2d 373, 382 (2005).

[4] A loan servicer may properly respond to a QWR in three ways.  "First, the loan servicer has the option of making corrections to the borrower's account, and informing the borrower of the corrections in writing while also including the contact information of a representative who could provide further assistance. 12 U.S.C. § 2605(e)(2)(A).  The servicer's second option is to investigate the request and provide the borrower with a written explanation that includes the reasons the servicer believes that the account is correct, combined with the contact information of a representative who could provide further assistance. 12 U.S.C. § 2605(e)(2)(B).  Lastly, the servicer may investigate the matter and provide written response to the borrower as to the reasons the servicer cannot obtain the information the borrower requested if indeed such information could not be obtained.  12 U.S.C. § 2605(e)(2)(C)."  <u>Carter v. Countrywide Home Loans, Inc.</u>, No. 3:07CV651, 2009 WL 2742560, at *6 (E.D. Va. Aug. 25, 2009).

why.  Her ensuing allegation that Wells "failed to adequately respond," is no more than a legal conclusion that stops short of the line between possibility and plausibility of entitlement to relief under Twombly.

Plaintiff also fails to allege facts that would support a pecuniary loss based upon Wells' timely response to the QWR.  This Court has held that to state a RESPA claim under 12 U.S.C. § 2605(e), Plaintiff must allege more than a vague entitlement to damages.  Padgett v. OneWest Bank, FSB, No. 3:10-CV-08, 2010 U.S. Dist. LEXIS 38293, at *41-42 (N.D. W. Va. Apr. 19, 2010).   In Padgett, the plaintiff alleged that OneWest failed to: acknowledge receipt of the QWRs, respond to the QWRs, and protect plaintiff's credit rating.  The Court declined to dismiss the alleged violations of 12 U.S.C. § 2605(e)(1) and (2) because the allegedly inaccurate imposition of late fees on plaintiff's account could constitute pecuniary loss.  However, the court dismissed the claim under § 2605(e)(3) because the plaintiff did not allege any pecuniary loss.

Here, Plaintiff makes only the vague assertion that she "suffered pecuniary and other injury," Am. Compl. ¶ 120, but does not allege any facts demonstrating how she was damaged monetarily by Wells' timely response.  Accordingly, Count I should be dismissed as to Wells.

## III.   PLAINTIFF'S TILA CLAIMS IN COUNT II ARE TIME-BARRED.

In Count II, Plaintiff seeks a variety of speculative damages based upon allegations that the "Defendants" failed to verify her repayment ability and make required disclosures under TILA and Regulation Z.  Wells refers to and incorporates by reference the arguments put forth by U.S. Bank National Association ("U.S. Bank") in Section II of its brief in support of dismissal, namely that Plaintiff's claims are barred by TILA's statutes of limitation.  See 15 U.S.C. §§ 1635(f), 1640(e).  For these reasons, Count II of the Amended Complaint should be dismissed with prejudice with regard to Wells.

**IV.    PLAINTIFF'S PUTATIVE BREACH OF CONTRACT AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS IN COUNT IV FAIL BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER HAMP, PLAINTIFF IS NOT ENTITLED TO A LOAN MODIFICATION, AND PLAINTIFF IS NOT AN INTENDED BENEFICIARY OF THE SPA OR PSA.**

Count IV of the Amended Complaint alleges that Wells purportedly breached three separate agreements: (1) a "trial modification" pursuant to HAMP; (2) a Servicer Participation Agreement ("SPA"); and (3) a Pooling and Servicing Agreement ("PSA").

**A.    Plaintiff Lacks Standing to Assert Claims Arising Under the EESA, TARP, or HAMP Because Plaintiff Has No Private Right of Action.**

Borrowers have attempted to rely on HAMP, as well as the Emergency Economic Stabilization Act of 2008 ("EESA" or the "Act") and the Troubled Asset Relief Program ("TARP"), to assert claims against lenders and/or servicers. Courts across the country agree that HAMP, the Act, and TARP, do not create a private right of action because they do not evidence an express or implied intention to afford borrowers such a remedy. See e.g., Hart v. Countrywide Home Loans, Inc., -- F. Supp. 2d --, 2010 WL 3272623, at *5 (E.D. Mich. Aug. 19, 2010); Dugger v. Bank of Am./Countrywide Loans, No. 1:10CV00076, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010); Zeller v. Aurora Loan Servs., No. 3:10cv00044, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010).

Pursuant to 12 U.S.C. § 5229, Congress gave a narrowly tailored private right of action to challenge the actions of the Secretary to those harmed by his actions. See 5 U.S.C. § 704 (limiting actions to those "for which there is no other adequate remedy in a court"). Although Congress explicitly provided for a private right of action against the Secretary, "the judicial review section of TARP never mentions a right of action against non-governmental entities, such as financial institutions receiving TARP funds." Robinson v. Wells Fargo Bank, N.A., No. CV09-2066-PHX-JAT, 2010 WL 2534192, at *5 (D. Ariz. June 18, 2009). Likewise,

"[n]owhere in the HAMP Guidelines, nor in the EESA does it expressly provide for a private right of action." Marks v. Bank of Am., N.A., No. 3:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *6 (D. Ariz. June 22, 2010).

In addition to not expressly intending a private right of action, these statutes do not imply one. In analyzing whether a private right of action is implicit in a statute that does not expressly provide for one, the determinative factor is whether Congress intended to create a private cause of action. Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979).

The provisions of TARP focus on the parties regulated and the agencies tasked with overseeing the regulations, not the individuals protected. Robinson, 2010 WL 2534192, at *7. In drafting TARP, Congress demonstrated that it knew how to create a private right of action by giving one to persons directly harmed by the Secretary's actions. Id. "The existence of other remedies in § 5229 is sufficient under federal common law to imply a lack of congressional intent to allow private actions against fund recipients." Regions Bank v. Homes By Williamscraft, Inc., No. 1:09-CV-91-TWT, 2009 WL 3753585, at *2 (N.D. Ga. Nov. 6, 2009).

In response to, and in conjunction with, the Act, the United States Treasury created HAMP. See 12 U.S.C. § 5219. The Act established, among many other things, frameworks for allowing certain loan modifications. 12 U.S.C. § 5220. Section 5219 provides that "the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages . . . to take advantage of . . . programs to minimize foreclosures." 12 U.S.C. § 5219(a). One such method of encouragement was through the execution of a Servicer Participation Agreement ("SPA"), where servicers would be compensated only for each completed modification under HAMP, regardless of the reason for the unsuccessful modification. The congressional record also

7

expressly and undeniably refutes any notion that Congress intended an implied private right of action to enforce the modification program.

> The central flaw of this bill is that there are no stronger protections for homeowners and no changes in the language to ensure that the Secretary has the authority to compel mortgage servicers to modify the terms of mortgage. . . . It is not as though we had no choice but to pass the bill before us. We could have done this differently. We could have demanded language in the legislation that would have empowered the Treasury to compel mortgage servicers to rework the terms of mortgage loans so homeowners could avoid foreclosure.

154 Cong. Rec. H 10712, 10766 (statement of Rep. Kucinich, Oct. 3, 2008).

### B. Wells Is Not Required to Offer Plaintiff a Permanent Loan Modification.

In support of her breach of an alleged contract formed during the "trial modification" period, Plaintiff alleges that Wells breached the contract by "failing to offer plaintiff permanent HAMP modification." Am. Compl. ¶ 150. Section 5219 does not *require* servicers to modify loans as a condition of receiving TARP funds, but instead it gives the Secretary the authority to *encourage* servicers to take advantage of the programs. In fact, Plaintiff herself acknowledges that Wells is only required to "evaluate all loans" that meet certain conditions, rather than offer borrowers permanent modifications. Am. Compl. ¶ 54. Simply put, Wells' participation in HAMP does not entitle Plaintiff to a modification.[5] See Hart, 2010 WL 3272623, at *5; Hoffman v. Bank of Am., N.A., No. C 10-2171 SI, 2010 WL 2635773, at *4 (N.D. Cal. June 30, 2010); Marks, 2010 WL 2572988, at *4; Zendejas v. GMAC Wholesale Mortgage Corp., No. 1:10-CV-00184, 2010 WL 2490975, at *3 (E.D. Cal. June 16, 2010). Further, according to

---

[5] Wells notes that Faulkner, 2010 U.S. Dist. LEXIS 59688, where this Court held that the complaint sufficiently stated a breach of contract claim based upon a HAMP modification agreement, is distinguishable from the present case. The agreement at issue in Faulkner was a permanent modification agreement, as opposed to an alleged contract formed during the trial modification period, which according to Plaintiff only lasted three months. See Am. Compl. ¶ 76. Further, unlike in Faulkner, Plaintiff has failed to identify the provision of the contract that supposedly was breached, which is fatal to such an allegation. Clendenin v. Wells Fargo Bank, N.A., No. 2:09-cv-00557, 2009 WL 4263506, at *3-4 (S.D. W. Va. Nov. 24, 2009); Cincinnati Ins. Co. v. Cost. Co., No. 5:10CV7, 2010 WL 1902995, at *3 (N.D. W. Va. May 11, 2010).

Plaintiff, Wells went beyond what was required of it by evaluating Plaintiff's modification request and even offering her two separate loan modifications.  Am. Compl. ¶¶ 50, 61.  The fact that they were not to her liking does not now give her standing to sue Wells.

In Vida v. OneWest Bank, F.S.B., No. 10-987-AC, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010), the court rejected the argument that a borrower could sue for breach of the trial modification period.  After finding that HAMP does not provide a private right of action, the court considered and rejected the notion that the trial period constituted an enforceable offer to modify the borrower's loan which occurred outside of any entitlement of HAMP.

> [T]he alleged offer to modify came about and was made wholly under the rubric of HAMP, as were Vida's alleged actions in acceptance of the offer, i.e., submitting the required documentation, and the alleged consideration, i.e., remitting reduced loan payments. Vida fails to state a cause of action independent of HAMP, for which there is no private right of action.

Id. at *5.  The court then looked to the language of the trial period agreement, finding that "the Plan states explicitly that modification is not guaranteed until the modification process is complete, and not at any intermediate point in the modification process. The Trial Period Plan is explicitly not an enforceable offer for loan modification."  Id. at *6.

Therefore, in addition to § 5219 simply encouraging servicers to modify loans, the specific Treasury Department guidelines governing Wells' participation in HAMP, the trial modification period, and the SPA do not require modification of Plaintiff's loan.  Plaintiff has no private cause of action under the Act, TARP, or HAMP, and Plaintiff lacks standing to assert claims for breach of contract and breach of the duty of good faith and fair dealing under these provisions.

9

**C.    Plaintiff Lacks Standing to Assert a Breach of the SPA Between Wells and the Federal Government Because Plaintiff Is Not An Intended Beneficiary.**

Plaintiff couches her theory of recovery as a breach of contract claim, alleging that "by failing to offer plaintiff permanent HAMP modification" Wells breached its duties under the SPA.   Am. Compl. ¶ 150.   Notably, Plaintiff does not allege that she was a third-party beneficiary to the SPA, and assuming *arguendo*, that Plaintiff seeks third-party beneficiary status by implication, Plaintiff lacks standing to assert such a claim because she is, at most, an incidental beneficiary to the SPA and does not have enforceable rights under the contract.   See McKensi v. Bank of Am., No. 09-11940-JGD, 2010 WL 3781841, at *5 (D. Mass. Sept. 22, 2010); Hoffman, 2010 WL 2635773, at *4-5; Marks, 2010 WL 2572988, at *4-5; Zendejas, 2010 WL 2490975, at *3; Benito v. Indymac Mortgage Servs., No. 2:09-CV-001218, 2010 WL 2130648, at *7 (D. Nev. May 21, 2010); Villa v. Wells Fargo Bank, N.A., No. 10CV81, 2010 WL 935680, at *3 (S.D. Cal. Mar. 15, 2010); Escobedo v. Countrywide Home Loans, Inc., No. 09cv1557, 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009).

Wells' SPA, which is a public record accessible on the Department of the Treasury's website, states that the agreement is governed by Federal law.   See SPA § 11(A) (attached for the Court's convenience as Exhibit A); Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (in ruling on a motion to dismiss courts may take judicial notice of matters of public record).

In Escobedo, the plaintiff asserted a similar breach of contract claim for an alleged breach of the SPA.   2009 WL 4981618, at *2.    The court noted that, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."   Id.   In order to permit individual enforcement, the contract must have included an expressed or implied intention to benefit the third party.   That

agreement, like the one at issue in this case, "did not grant qualified borrowers the right to enforce the Agreement" because it expressly stated that the benefits only inured to the "parties to the Agreement and their permitted successors-in-interest." Id. (quoting § 11(E) of the SPA).  In addition, the court noted that a "borrower would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him or her because the Agreement does not require that [Lender] modify eligible loans." Id. at *3.  The courts in Hoffman, Marks, Zendejas, Benito, and Villa reached an identical conclusion upon the same reasoning.

In this case, the lack of expressed or implied intent that Plaintiff be afforded third-party beneficiary status belies Plaintiff's breach of contract theory under the SPA.  The SPA expressly provides that the benefits only inure to the parties to the agreement.  The SPA is also consistent with the enabling statutory scheme, which also does not provide a private cause of action.  Plaintiff is presumed to be an incidental beneficiary unless some other intent is clearly indicated, which none is.  Accordingly, Plaintiff is, at best, an incidental beneficiary, and therefore she lacks standing to assert a third-party beneficiary breach of contract claim.

**D.    Plaintiff Lacks Standing to Assert a Breach of a Vaguely-Referenced Pooling and Servicing Agreement.**

Plaintiff also has failed to state a plausible claim that "Defendants Wells Fargo and BOA breached the [PSA] submitted for the 2006-G Trust that included plaintiff's loan." Am. Compl. ¶ 151.  "Under West Virginia law, 'to state a claim for breach of contract under Rule 8, [a plaintiff] must allege the following elements: the existence of a valid, enforceable contract, that the plaintiff has performed under the contract, that the defendant has breached or violated its duties or obligations under the contract, and that the plaintiff has been injured as a result.'" Wince v. Easterbrooke Cellular Corp., 681 F. Supp. 2d 688, 693 (N.D. W. Va. 2010) (citations omitted) (emphasis removed).  Each of these elements is an essential element of a breach of

11

contract claim, and the failure to plead the factual basis for any of these elements is fatal to a putative breach of contract claim.  Id.  Further, a plaintiff who claims a breach of contract must identify the provision of the contract that supposedly was breached.  Clendenin, 2009 WL 4263506, at *3-4; see Cincinnati Ins. Co., 2010 WL 1902995, at *3.

Here, other than Plaintiff's conclusory allegation that Wells "breached the [PSA]." Plaintiff makes only general references to the PSA.  See Am. Compl. ¶ 209.  Plaintiff has not alleged the factual basis for any elements of a breach of contract claim, stated what provisions of the PSA were breached, if any, or alleged any conduct of Defendants that might constitute a breach.  Thus, Plaintiff has failed to state a claim for a breach of the PSA.

In addition, Plaintiff has not alleged that she is an intended beneficiary of any PSA.  To the extent that Plaintiff is implying that she is an intended beneficiary, Plaintiff has pleaded no facts that would support such a claim.  Plaintiff "did not become a party, agent or assignee of a party, or a third-party beneficiary of the [pooling and servicing] agreement."  See Bittinger v. Wells Fargo Bank N.A., -- F. Supp. 2d --, 2010 WL 3984626, at *4 (S.D. Tex. Oct. 8, 2010). See also Barberan v. Nationpoint, 706 F. Supp. 2d 408, 425 n.10 (S.D.N.Y. 2010).  Accordingly, Plaintiffs breach of contract claims in Count IV fail as a matter of law.

**E.**      **Plaintiff's Claim for Breach of the Duty of Good Faith Fails Because West Virginia Does not Recognize It as a Stand-Alone Cause of Action.**

Because Plaintiff has not alleged plausible breach of contract claims, her claim for breach of the duty of good faith and fair dealing must fail.  West Virginia does not recognize a stand-alone cause of action for breach of the implied covenant of good faith and fair dealing.  Manning v. Wells Fargo, N.A., No. 1:09-CV-83 (N.D. W. Va. Sept. 24, 2009); Highmark West Virginia, Inc. v. Jamie, 221 W. Va. 487, 492, 655 S.E.2d 509, 514 (2007).  The failure to identify a specific provision of a contract that allegedly was breached by the defendant is fatal to both the

breach of contract claim and to the breach of covenant of good faith and fair dealing claim. Clendenin, 2009 WL 4263506, at *4-5.  As Plaintiff's breach of contract claims fail as a matter of law, Plaintiff's remaining stand-alone cause of action for breach of the implied covenant of good faith also fails and must be dismissed.

## V.   THE NBA PREEMPTS PLAINTIFF'S WVCCPA CLAIMS IN COUNTS IX AND XI FOR SUPPOSED SERVICING VIOLATIONS AGAINST WELLS.

Count IX of the Amended Complaint alleges violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), by Defendants First Independent Mortgage Company, Mortgage Electronic Registration Systems, Inc., Samuel I. White, PC, Seneca Trustees, LLC and Wells, but fails to specify which Defendant committed which acts or even the relationship between the parties.  Wells submits that even if this Court takes these confusing and sometimes contradictory allegations as true, Plaintiff's claims fail as to Wells because such claims are preempted by federal law.  Likewise Count XI, which is aimed solely at Wells, is also explicitly preempted by federal law.

In addition to the arguments set forth below, Wells refers to and incorporates by reference the legal discussion set forth in Section III of U.S. Bank's brief in support of its motion to dismiss.[6]  For these reasons the Plaintiff's WVCCPA claims should be dismissed as to Wells.

### A.   Plaintiff Fails to Allege Sufficient Facts to Support Her Fraudulent Debt Collection Claim in Count IX in Connection with the Servicing of Her Loan, Which is Otherwise Preempted by the NBA.

Plaintiff's claim in Count IX, that Defendants violated section 46A-2-127(e) of the WVCCPA, fails as a matter of law because the Amended Complaint is devoid of sufficient

---

[6] Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. which is a national bank.  See OCC List of National Banks and Federal Branches and Agencies active as of 12/31/2010, available at *http://www.occ.gov/topics/licensing/national-bank-lists/bank-list-national-by-name-v2.pdf*   (attached for the Court's convenience as Exhibit B).

factual allegations to support such claims,[7] and to the extent that she has stated plausible claims, they are otherwise preempted by the NBA.  Again, Plaintiff has lumped all Defendants together, claiming that the letters she received, from an unknown defendant or defendants, alleging a delinquency in her mortgage constitute separate violations of the WVCCPA of which all defendants are liable.  The only mention of notices related to her default were from Samuel I. White, PC, not Wells, informing Plaintiff that it had been instructed to institute foreclosure proceedings.  Am. Compl. ¶ 106.  Plaintiff also alleges no facts as to the content of these notices or how they were in any way fraudulent, deceptive, or misleading.  Further, it strains plausibility that any of these letters could be false because Plaintiff readily admits she "was three months behind in her mortgage payments" as of March 2009.  Am. Compl. ¶ 51.

In addition, to the extent that Plaintiff complains that Wells' alleged actions occurred in connection with the servicing of her mortgage, her claim is preempted because only the OCC can regulate Wells' actions involving the "servicing . . . of . . . mortgages."  12 C.F.R. § 34.4(a)(10). Staats v. Bank of America, N.A., No. 3:10-cv-68, at 21 (N.D. W. Va. November 4, 2010).

**B.     Plaintiff Fails to Allege Sufficient Facts to Support Her Fraudulent Debt Collection Claim in Count XI in Connection with the Servicing of Her Loan, Which is Otherwise Preempted by the NBA.**

Plaintiff also makes a further allegation under the WVCCPA that Wells' refusal to comply with the terms of an alleged "loan modification agreement" is an unfair and deceptive practice under section 46A-6-104.  This argument assumes that Plaintiff and Wells had an enforceable contract to modify her mortgage, which, as discussed in detail above, is erroneous because participation in the trial modification period does not obligate Wells to modify her

---

[7] Pursuant to section 46A-2-127(e), a debt collector is prohibited from making any "false representation or false implication that any debt collector is vouched for, bonded by, affiliated with or an instrumentality, agent or official of this state or any agency of the federal, state or local government."  The Complaint is completely devoid of any facts alleging that Wells made any representations that it is affiliated with a government entity, and Count IX can be dismissed on these grounds alone.

mortgage or constitute an enforceable contract.  See Vida, 2010 WL 5148473, at *5.

Further, Plaintiff's claims are explicitly preempted by 12 C.F.R. § 34.4(a)(10) which governs the "processing" and "servicing . . . of . . . mortgages."  In Staats, No. 3:10-cv-68, at 21, the plaintiffs alleged a violation the WVCCPA on the basis that the lender represented that it would provide an affordable loan modification and instructed plaintiffs to not make payments toward their debt, yet refused to evaluate the plaintiffs for a loan modification.  This court dismissed the claim, finding that "restricting the content of . . . communications with a borrower in considering a potential loan modification implicates the 'processing' and 'servicing' of mortgages by the operating subsidiary of a national bank."  Id.  The court concluded that "no discussion of the effect of W.Va. Code § 46A-127 is necessary because it falls within a category of state laws that is expressly preempted."  Id.

Plaintiff's claim under section 46A-6-104 in Count XI is no different.  In support of this claim, Plaintiff alleges that: Wells Fargo Executive Specialist, Leann Miller, offered Plaintiff a "payment moratorium" while Wells evaluated Plaintiff's loan for modification; in reliance on those statements Plaintiff stopped making her monthly payments; and that Wells offered Plaintiff a proposed modification which she found unacceptable.  Am. Compl. ¶¶ 43, 46, 49, 50.  As these allegations attempt to restrict the content of communications by Wells when it considers a loan modification request, this claim is explicitly preempted and should be dismissed.

## VI. COUNT VI CONTAINING PLAINTIFF'S FRAUD CLAIM IMPERMISSIBLY LUMPS ALL DEFENDANTS TOGETHER AND CANNOT MEET THE HEIGHTENED PLEADING REQUIREMENT OF RULE 9(B).

Plaintiff's allegations do not meet the pleading standard required to survive a motion to dismiss.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, the pleader must allege "the

time, place, and contents of the false representations, as well as the ***identity of the person*** making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation and quotation marks omitted) (emphasis added). The factual allegations must "be specific enough to give defendants sufficient notice of the particular misconduct that is alleged to constitute fraud so that they can defend against the charge." Zaremski v. Keystone Title Assocs., Inc., 884 F.2d 1391, 1989 WL 100656, at *2 (4th Cir. Aug. 30, 1989) (unpublished table decision). "Rule 9(b) does not allow a complaint to merely lump defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007); see also United States ex rel. Carter v. Halliburton Co., No. 1:08CV1162, 2009 WL 2240331, at *15 (E.D. Va. July 23, 2009); Dealers Supply Co. v. Cheil Indus., Inc. 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004).  Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). Halliburton, 2009 WL 2240331, at *7.

Here, the Amended Complaint is devoid of any reference to the identity of any person at Wells who made any of the specific representations aimed at the group of defendants in Count VI.  The Amended Complaint also lumps five of the defendants together without specifying which defendant made which representation, why any particular representation was false, how Plaintiff relied on these representations, or how Plaintiff was damaged as a result.[8]  Therefore, Count VI should be dismissed.

---

[8] Plaintiff alleges that First Independent represented to Plaintiff that if she "paid for 3 months, Plaintiff would get a permanent modification."  See Am. Compl. ¶ 161.  This allegation seems to relate to an allegation aimed at Wells.  See Am. Compl. ¶ 75.  However, any allegations relating to a national bank's communications with a borrower in considering a potential loan modification is preempted by 12 C.F.R. § 34.4(a)(10). See Staats, No. 3:10-cv-68, at 21.

**VII.   PLAINTIFF'S CONSPIRACY TO DEFRAUD CLAIM THEORY IN COUNT III, IMPERMISSIBLY LUMPS ALL DEFENDANTS TOGETHER, CANNOT MEET THE HEIGHTENED PLEADINGS REQUIREMENT OF RULE 9(B) AND IS OTHERWISE PREEMPTED BY THE NBA.**

Wells refers to and incorporates by reference the legal discussion set forth in Section IV of U.S. Bank's brief in support of its motion to dismiss.  For these reasons Wells is entitled to dismissal of Plaintiff's conspiracy claim in Count III.

**VIII.   COUNT VII FAILS AS A MATTER OF LAW BECAUSE WELLS DOES NOT OWE A FIDUCIARY DUTY TO PLAINTIFF AND IS OTHERWISE PREEMPTED BY THE NBA.**

Plaintiff's breach of fiduciary duty claim in Count VII for "provid[ing] mortgage loan services to Plaintiff" fails as a matter of law as to Wells, as an alleged "lender," see Am. Compl. ¶ 105, because a fiduciary relationship does not arise between lenders and borrowers.  Michael v. Wesbanco Bank, Inc., No. 5:04CV46, 2006 WL 2560108, at *2-3 (N.D. W. Va. Sept. 1, 2006); Knapp v. Am. Gen. Fin. Inc., 111 F. Supp. 2d 758, 766 (S.D. W. Va. 2000).  Further, as discussed above, the acts Plaintiff complains of, namely failing to take into account her income and expenses in extending her a loan and failing to provide plaintiff with an affordable loan, are expressly preempted by 12 C.F.R. § 34.4(a)(10).

**IX.   COUNT V FAILS TO STATE A PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT AND IS OTHERWISE PREEMPTED BY THE NBA.**

Count V of the Amended Complaint, alleging unjust enrichment, as applied to Wells, also fails as a matter of law.  To prevail on a claim for unjust enrichment, "it must be 'inequitable *and* unconscionable' for the party to avoid paying for the benefit."  Veolia Es Special Services, Inc. v. Techsol Chem. Co., No. 3:07-0153, 2007 WL 4255280, at *10 (S.D. W. Va. Nov. 30, 2007) (emphasis in original).  Plaintiff alleges that Wells was unjustly enriched by "collect[ing] an upfront fee from Plaintiff without performing a loan modification."  Am. Compl. ¶ 154.  Plaintiff has not alleged any specific facts explaining why it would be wrong for Wells to collect an

upfront fee.  To the extent that Plaintiff is referring to the payments she made during the HAMP trial modification period, Plaintiff has not alleged how the receipt of those payments was improper, let alone inequitable and unconscionable.  Plaintiff does not allege that Wells failed to credit her account with those payments which were significantly lower than her regular monthly payment.  See Am. Compl. ¶¶ 61, 75.  Again, Wells was not required to offer Plaintiff a permanent modification at the conclusion of the trial period, and as Plaintiff has no private right of action under HAMP, she cannot disguise her failed HAMP claim as one for unjust enrichment and prevail.

In addition, the allegations in Count V aimed at Wells are preempted by 12 C.F.R. § 34.4(a)(10) which authorizes the sale or investment of, or investment or participation in mortgages without regard for state law.

**X.    COUNT VIII FAILS TO STATE A PLAUSIBLE CLAIM FOR NEGLIGENCE AND IS OTHERWISE PREEMPTED BY THE NBA.**

In Count VIII of her Amended Complaint, Plaintiff purports to make a claim for negligence.  This putative claim is but another attempt to improperly impose duties on Wells relating to the "[p]rocessing, origination, [or] servicing" of mortgages under the guise of a state law claim.  As such, this count, too, is preempted by 12 C.F.R. § 34.4(a)(10).  Moreover, Count VIII does not allege that Wells in particular did or did not do anything wrong.  Rather, Plaintiff claims that First Independent negligently failed to verify her accurate income to qualify her for the loan.  The Complaint then makes a broadside attack on the other Defendants and asserts that they collectively had a duty to preserve the original note and loan documents and that the "Defendants" have referred to an invalid note to foreclose or threaten to foreclose on the property.  See Am. Compl. ¶¶ 178-80.  The factual basis for any such duty to preserve the note, if one exists and is not preempted, is not alleged, and there appears to be no recognized cause of

action in West Virginia for the failure to preserve a note. Moreover, the Complaint (1) acknowledges that Plaintiff sought and received financing, (2) fails to allege that there were any differences as to any notes that Plaintiff seeks to put at issue in the Complaint, (3) does not allege that Plaintiff ever repaid the loan or any note evidencing the loan, and (4) essentially concedes that Plaintiff defaulted on the loan. Based on these allegations, even if Plaintiff's claims were not otherwise preempted, Plaintiff would have no cause of action for negligence.

## XI.   COUNT XII FAILS TO STATE A PLAUSIBLE CLAIM FOR SLANDER OF TITLE AND IS OTHERWISE PREEMPTED BY THE NBA.

Count XII attempts to hold Wells liable on the theory of "co-venture," for a variety of actions that Plaintiff claims clouded her title. Even taking Plaintiff's allegations as true, Plaintiff's "co-venture" theory fails because SIW, PC, the party who allegedly filed the false documents is not a party to the "co-venture." Am. Compl. ¶¶ 201, 202. Plaintiff alleges that only Wells, First Independent, and the "2006-G trust" were engaged in the "co-venture." Am. Compl. ¶ 201. First, among the elements required to state a claim for slander of title, Plaintiff must allege facts showing special damages as a result of diminished value in the eyes of third parties. TXO Prod. Corp. v. Alliance Resources Corp., 187 W. Va. 457, 466, 419 S.E.2d 870, 879 (1992). Plaintiff alleges that the sale of her note somehow clouded her title and that it is impossible for Plaintiff to sell the property, but the only possible cloud on Plaintiff's title is the deed of trust, the validity of which she has not contested. See Am. Compl. ¶ 32 ("Plaintiff signed, initialed, and dated each page of the March 27, 2006 documents."). The recorded assignment of the deed of trust, or the substitution of trustee have absolutely no effect on the validity of the deed of trust, and Plaintiff fails to explain how she was damaged by the recordation of these documents. Moreover, as this claim seeks to impose requirements on Wells to obtain Plaintiff's

consent prior to the sale of her note, it is preempted by 12 C.F.R. § 34.4(a)(10).  See Am. Compl.

¶¶ 200, 201.  Therefore, Count XII should be dismissed as to Wells.

**XII.**   **COUNT X AND XIII ,WHICH ALLEGE A VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AND SEEKS A DECLARATORY JUDGMENT, LITERALLY FAIL TO STATE A CLAIM AGAINST WELLS.**

Wells is not named in the caption under Plaintiff's Counts X or XIII.  Accordingly, these

Counts provides no basis for keeping Wells in this lawsuit or declining to dismiss Wells from

this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, Wells respectfully requests that it be dismissed from this

lawsuit.  The Plaintiff has already amended her complaint once, and any further attempt to

amend would be futile.  Therefore, all claims should be dismissed with prejudice pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.

                                         WELLS FARGO BANK, N.A.

                                         /s/ Jeremy C. Hodges

Marc E. Williams, Esq. (WVSB #4062)
marc.williams@nelsonmullins.com
Melissa Foster Bird, Esq. (WVSB # 6588)
melissa.fosterbird@nelsonmullins.com
Jeremy C. Hodges, Esq. (WVSB # 11424)
jeremy.hodges@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH, LLP
949 Third Avenue / Suite 200
Huntington, WV 25701
(304) 526-3500
*Counsel for Defendant Wells Fargo Bank, N.A.*

Dated:  February 14, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG**

DIANNA WITTENBERG,                          )
                                            )
                     Plaintiff,             )
                                            )
v.                                          )
                                            )   Civil Action No.  3:10-CV-00058-JPB
FIRST INDEPENDENT MORTGAGE                  )
COMPANY, <u>et al.</u>,                     )
                                            )
                     Defendants.            )
                                            )
                                            )

**CERTIFICATE OF SERVICE**

        The undersigned attorney hereby certified that the foregoing "**Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint**" was filed with the court through the ECF system and copies of the above will be sent electronically to the registered participants as identified on the notice of electronic filing (NEF) and paper copies of the entire document will be sent to those indicated below on the 14th day of February, 2011.

        Bobbie U. Vardan, Esq.              Gary G. Geffert
        BBI Law Group, P.C.                 114 S. Maple Ave.
        8230 Boone Blvd., Ste. #330         P.O. Box 2281
        Vienna, VA  22182                   Martinsburg, WV 25402

                                 /s/ Jeremy C. Hodges
                                 Marc E. Williams, Esq. (WVSB #4062)
                                 Marc.williams@nelsonmullins.com
                                 Melissa Foster Bird, Esq. (WVSB # 6588)
                                 Melissa.fosterbird@nelsonmullins.com
                                 Jeremy C. Hodges, Esq. (WVSB # 11424)
                                 Jeremy.Hodges@nelsonmullins.com
                                 NELSON MULLINS RILEY & SCARBOROUGH, LLP
                                 949 Third Avenue / Suite 200
                                 Huntington, WV 25701
                                 (304) 526-3500
                                 *Counsel for Defendant Wells Fargo Bank, N.A.*